593 P.2d 995

OWYHEE COUNTY, Transamerica Insurance Group, Safeco Insurance Companies, Maryland Casualty Company, Aetna Casualty and Surety Company and Western Surety Company, Plaintiffs-Appellants,

v.

Harold F. RIFE, Leonard R. Wilson, Tony Przybylski and Rife, Wilson and Przybylski, Defendants-Respondents.

No. 12652.

Supreme Court of Idaho.

April 23, 1979.

Richard B. Eismann, Homedale, for plaintiffs-appellants.

E. Don Copple, Jr., Davison, Copple & Copple, Boise, for defendants-respondents.

SHEPARD, Chief Justice.

During the years 1951 through 1972, the treasurer of Owyhee County embezzled in excess of $104,000.00. This action alleges malpractice on the part of defendants-respondents accountants in failing to discover

that embezzlement. We affirm in part and reverse in part.

Sadie Eisenhart was treasurer and ex-officio tax collector of Owyhee County from January 8, 1951 until her resignation on June 26, 1972. During that period she embezzled from Owyhee County $104,415.12. Owyhee County is a large area, being approximately the same size as New Jersey, with a population in 1970 of only 6,422 people. With County approval, Eisenhart, as treasurer of the County, had maintained large amounts of cash to provide check cashing services to Owyhee County residents. She maintained two bank checking accounts, one as tax collector and the second as treasurer. The embezzlement scheme was relatively simple, since Eisenhart apparently knew the auditing procedures utilized by defendants-respondents and their predecessors, and also knew the times the audits would take place.

As a part of the audit procedure, the accountants, on the second Monday of January each year, would count the cash, together with the checks on hand which had not been yet deposited. Each year immediately prior to that cash count, Eisenhart would issue one or more checks drawn on the tax collector's bank account in the amount of the total embezzled monies. Those checks would not be recorded in the books of the tax collector. They would, however, be included among the assets of the treasurer's office. At the completion of the audit and before the checks could be cashed, Eisenhart would then destroy those bogus checks. That procedure was repeated each year until the defalcations were finally discovered on June 26, 1972, during an audit by defendants-respondents. There are no allegations that the defendants-respondents in any way participated in the defalcations nor that they fraudulently concealed any of the above facts.

During Eisenhart's many terms of office as county treasurer, Owyhee County had purchased surety bonds from various insurance companies. All but a small portion of the embezzlement loss has been recovered by Owyhee County from the various insurance companies on their surety bonds. On January 4, 1974, this action was initiated solely by plaintiff-appellant Owyhee County. Those plaintiffs-appellants insurance companies who issued any surety bonds have contended they should be subrogated to the rights of Owyhee County and they were named as party plaintiffs pursuant to I.R.C.P. 19(a)(1).

During the years 1951 through 1956, the accounts of Owyhee County were audited yearly by accountants other than defendants-respondents. Those accountants are not involved in this action. In 1957, the defendants-respondents were awarded the contract to perform the audit services on the accounts of Owyhee County at issue here. They performed those audit services until 1973, through a series of two-year contracts.

The fiscal year of the County would begin on the second Monday of each year and terminate one year thereafter. The audits conducted by the accountants would take place on the second Monday of each year and the audit report for that concluded fiscal year would be presented to the County in the following May or June.

On motion therefor, the district court granted partial summary judgment in favor of defendants-respondents and dismissed those causes of action relating to the years 1957 through 1968, and the year 1970, on the grounds that those actions were barred by the applicable statute of limitations. Summary judgment was also granted and the causes of action dismissed which related to the years 1951 through 1956, stating that there was no basis for a claim of relief. Apparently, that motion was granted on the basis that the defendants-respondents here were not the accountants for Owyhee County during that period. The district court further certified there was no just reason for delay and that its order constituted a final judgment pursuant to I.R.C.P. 54(b).

I.C. § 5–217, when read in conjunction with I.C. § 5–214, provides a four year statute of limitations on "[a]n action upon a contract, obligation or liability not founded upon an instrument in writing." I.C.

§ 5–224 provides, "[a]n action for relief not hereinabove provided for must be commenced within four (4) years after the cause of action shall have accrued."

As above noted, this action was initiated January 4, 1974. As to those audit reports of the accountants delivered to Owyhee County before March 24, 1971, it is not clear whether the district court applied the limitation period of I.C. § 5–217 or I.C. § 5–224, but since both statutes provide a four year statute of limitation, as applied in this case there is no distinction. In another case at another time such distinction may become relevant. Here plaintiff-appellant pleaded a cause of action in both breach of contract and tort. In other jurisdictions the statute of limitations applicable to accountants' malpractice has sometimes been determined on whether the action fell in contract or tort because of different limitation periods. See Annot. 26 A.L.R.3d 1438. Here, however, since the statutes of limitation periods are identical as to those causes of action accruing prior to March 24, 1971, the distinction has no relevance.

■ The specific question presented on this appeal is whether the cause of action for each fiscal year first accrued at the time of the actual occurrence of the illegal acts of malpractice, or, on the other hand, whether the court should apply a "discovery rule" exception and hold that the cause of action for each fiscal year did not accrue until the date when Owyhee County first discovered the defalcations of Eisenhart. Plaintiffs-appellants, of course, urge the latter interpretation and argue for that discovery rule.

This Court's recent decision in Martin v. Clements, 98 Idaho 906, 575 P.2d 885 (1978),

is dispositive. Martin involved acts of alleged malpractice by an attorney in 1954, which were not discovered by the clients until June of 1972. The Court expressly declined to create a "discovery" exception for legal malpractice actions and held that the cause of action accrued in 1954 and applied the statute of limitations in effect in 1954. As noted in Martin, this Court has only applied a discovery exception in two situations, i. e., where a foreign object is left in a patient, Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964), and where there has been a misdiagnosis, Renner v. Edwards, 93 Idaho 836, 475 P.2d 530 (1970). We find the analysis of the Martin decision persuasive and decline to create a discovery exception in an action for accountants' malpractice as alleged herein. Applying a four year limitation period to each fiscal year, we hold that the causes of action for fiscal years 1951 through 1968 are barred. As to that cause of action relating to fiscal year 1969, the district court correctly determined that such cause was not barred by the statute of limitations since the four year period had not run as of the date of the filing of the complaint. Because the causes of action for fiscal years 1951–1956 are barred by the four year statute of limitations, we find it unnecessary to decide whether those fiscal years were also properly dismissed on the grounds there was no basis for a claim of relief since defendants were not the accountants for Owyhee County during that period.

As to the causes of action relating to fiscal years 1970 through 1972, the district court found that the applicable statute of limitations was I.C. § 5–219(4), which became effective on March 24, 1971.[1] This

1. 5–219. *Actions against officers, for penalties, on bonds, and for professional malpractice or for personal injuries.*—Within two (2) years:

1. An action against a sheriff, coroner or constable, upon the liability incurred by the doing of an act in his official capacity, and in virtue of his office, or by the omission of an official duty, including the nonpayment of money collected upon an execution.

2. An action upon a statute for a penalty or forfeiture, where the action is given to an individual, or to an individual and the state, except

when the statute imposing it prescribes a different limitation.

3. An action upon a statute or upon an undertaking in a criminal action for a forfeiture or penalty to a county or to the people of the state.

4. An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; provided,

section provides a two year statute of limitations for "professional malpractice," as defined therein. The district court found that the cause of action for fiscal year 1970 accrued in June of 1971 when that audit report was delivered to Owyhee County. Applying the two year statute of limitations, the district court held that action was barred since the complaint was not brought until January 4, 1974.

As to the causes of action based on the fiscal years 1971 and 1972, the district court determined that the action had been filed within two years of the date those fiscal year audit reports were delivered to Owyhee County and, therefore, the claims were not barred. While the June 1972 audit report of the defendants which indicated the defalcations may present a defense to the claims based on fiscal years 1971 and 1972, the rulings of the trial court concerning the claims for those years were based solely on the question of the applicable statute of limitations and those rulings are not challenged on appeal.

█ It is argued by plaintiffs-appellants that the district court erred in determining that the two year statute of limitations of I.C. § 5–219(4) was applicable to the cause of action based on fiscal year 1970. It is necessary therefore to determine whether

the defendants fall within the ambit of the professional malpractice statute. The named defendants here are Harold Rife, Leonard Wilson and Tony Przybylski, as individuals and their accounting partnership of Rife, Wilson, and Przybylski. When the audit report for fiscal year 1970 was presented to Owyhee County in June 1971, Wilson was licensed by the State of Idaho as a certified public accountant. The Idaho statute providing for the licensing of certified public accountants, in effect at that time, had been enacted in 1963. *See* 1963 Idaho Sess.Laws Ch. 284. The parties are in agreement that accountants have long been recognized as a skilled professional class. *See generally* Hawkins, Professional Negligence Liability of Public Accountants, 12 Vanderbilt L.Rev. 797 (1959); Annot., 54 A.L.R.2d 324. It appears from the record before us that Wilson, as a licensed certified public accountant, was engaged in a "professional service" as defined by I.C. § 5–219(4) when he participated in the audit of the account of Owyhee County.

█ The term "professional malpractice" as used in I.C. § 5–219(4) "refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the

however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object to the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing pro-

fessional or commercial relationship between the injured party and the alleged wrongdoer, and, provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term "professional malpractice" as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. This subsection shall not affect the application of section 5–243, Idaho Code, except as to actions arising from professional malpractice. Neither shall this subsection be deemed or construed to amend, or repeal section 5–241, Idaho Code.

5. An action for libel, slander, assault, battery, false imprisonment or seduction.

6. An action against a sheriff or other officer for the escape of a prisoner arrested or imprisoned on civil process.

state of Idaho." This Court has not as yet defined the limits of what may constitute professional services as contained in I.C. § 5–219(4). We hold, however, that there exists at a minimum under I.C. § 5–219(4) a threshold requirement that the person, firm, association, entity or corporation be licensed to perform such services and if the particular defendant is not so licensed to perform the type of service rendered, then the provision of I.C. § 5–219(4), creating a two year statute of limitations for professional malpractice, is not applicable.

 In June 1971 there was no statutory provision for the licensing of "public accountants" in Idaho. In June 1971, the defendants Rife and Przybylski denominated themselves "public accountants." They were not "certified public accountants." At that time they clearly were not engaged in professional services for which they were licensed. We hold, therefore, that the alleged acts of malpractice of the defendants Rife and Przybylski cannot be denominated as of June, 1971 to be "professional malpractice" as defined in I.C. § 5–219(4), and hence the two year limitation period of that section is inapplicable to the causes of action against them relating to that fiscal year (1970). The applicable statute of limitations therefore as to defendants Rife and Przybylski are the four year periods of either I.C. § 5–217 or I.C. § 5–224, and as to the fiscal year 1970, those statutes of limitations had not run when the cause of action was filed in January 1974.[2]

We finally note that there appears no contention but that the defendants Rife and Przybylski were members of the partnership of Rife, Wilson and Przybylski at the time (June 1971) the audit report for fiscal year 1970 was presented to Owyhee County. A partnership is liable for the wrongful acts or omissions of any partner acting in the ordinary course of the business of the partnership or with the authority of his co-partners. I.C. § 53–313. Further, all partners are liable jointly and severally for everything chargeable to the partnership.

I.C. § 53–315. Thus, although the two year statute of limitations provided by I.C. § 5–219(4) may have run as to the cause of action against Wilson for fiscal year 1970, he may nevertheless still be found liable as a partner if the facts alleged are later proven. *See generally* 53 C.J.S. Limitations of Actions § 13.

In conclusion, we hold that the causes of action for fiscal years 1951 through 1968 are barred by the appropriate statutes of limitation and the summary judgment of the district court to that extent is affirmed. As to the causes of action for fiscal years 1969 through 1972, we hold that such are not barred by the applicable statute of limitations and the summary judgment of the district court to that extent is reversed. The cause is remanded for appropriate further proceedings consistent herewith. No costs allowed.

BAKES and BISTLINE, JJ., SCOGGIN and WALTERS, JJ. Pro Tem., concur.

---

**2.** *See* Idaho Sess.Laws 1974 Ch. 263, wherein both "certified public accountants" and "public accountants" became the subject of licensing requirements.