821 P.2d 996

**Larry ERNST and Lori Ernst, husband and wife, Plaintiffs–Respondents,**

v.

**HEMENWAY AND MOSER, CO., INC., Hemenway and Moser of Boise, Inc., Defendants,**

and

**H and M Distributing, Inc., Defendant–Appellant.**

No. 18173.

Court of Appeals of Idaho.

March 1, 1991.

Petition for Review Granted May 29, 1991.

Petition for Review Withdrawn Dec. 13, 1991.*

* Published at 821 P.2d 995.

John B. Kugler, Pocatello, for defendant-appellant.

Harry De Haan, Twin Falls, for plaintiffs-respondents.

WALTERS, Chief Judge.

This is an appeal in an action for damages based on the breach of an alleged oral contract relating to the acquisition of a franchise to distribute beer products. A jury found defendant-appellant, H & M Distributing, Inc., to be liable to Larry and Lori Ernst, plaintiffs-respondents, for breach of contract, but determined that the Ernsts had failed to prove damages. The Ernsts moved for a new trial, which the court granted, limiting the new trial to the issue of damages. H & M appeals, claiming that the trial court erred in granting the new trial, or that, if there is to be a new trial, it should not be limited to a determination of damages. We affirm the order granting the limited new trial.

### Facts

Larry and Lori Ernst were the operators, directors and shareholders of Valley Distributing, Inc. (Valley), an Idaho corporation with a franchise from Pabst Blue Ribbon, Inc. (Pabst), to distribute beer products in the Magic Valley area. In 1983 Valley fell on hard times. Pabst told Valley that if sales did not increase Pabst would revoke its franchise. Knowing that he could not improve sales, Larry Ernst approached Hemenway and Moser Co. of Boise, Inc. (Hemenway), a candy distributor, proposing to help it acquire the Pabst distributorship for a fee of $14,000. Payment was to be based on a formula of fifty cents for each case of beer Hemenway sold up to 28,000 cases, or $14,000. The alleged agreement was never reduced to writing. In November 1983, Pabst revoked Valley's franchise. In December 1983, Larry Ernst went to work as a salesman for Hemenway. During the same month, Pabst awarded a beer distribution franchise to Hemenway.

In 1985, H & M Distributing, Inc. (H & M) bought Hemenway, assuming all of the latter's assets and liabilities, including the Pabst franchise. Before the purchase, H & M requested a bulk sales affidavit from Hemenway including a list of its creditors. The Ernsts' claim was not on the list. In 1985, Larry Ernst sought payment of $14,000 from H & M based on his alleged oral contract with Hemenway. When H & M denied the claim, the Ernsts filed a complaint against Hemenway and H & M. At the time of the filing, Valley was no longer in business. At trial, the jury found H & M liable to the Ernsts on the basis of the oral agreement. However, the jury did not award any damages, because the jury specifically found that the Ernsts had failed to prove the number of cases of beer Hemenway had sold between 1983 and 1985. The court granted the Ernsts' motion for a new trial limited to the question of damages.

### Issues

Although the primary challenge made on this appeal relates to the order granting a new trial, H & M raises several subsidiary issues which we will address. They include (a) whether Ernsts' complaint stated a cause of action; (b) Ernsts' standing to bring the action; (c) the enforceability of the oral agreement under the statute of frauds; (d) liability of H & M under the Bulk Transfers law; (e) the priority of an

order compelling production of documents; (f) the refusal of the court to permit H & M to introduce three documents in evidence; and (g) the failure of the court to award costs and fees to H & M. We will discuss each of these questions in turn.

## I.

### A. New Trial

■■■ The first issue raised by H & M is that the trial court erred in granting the Ernsts' motion for a new trial when that motion contained no supporting affidavit as required in I.R.C.P. 59(a). Failure to comply with procedural rules is a question of law over which we exercise free review.

Civil Rule 59(a) states that a new trial may be granted for any one of seven reasons. Only two of these reasons are relevant here. The first allows a court to grant a new trial if there were irregularities "in the proceedings of the court, jury, adverse party, or any order of the court ..." and requires a supporting affidavit. I.R.C.P. 59(a)(1). The second reason allows the granting of a new trial for "insufficiency of the evidence to justify the verdict or other decision, or that it is against the law." I.R.C.P. 59(a)(6). This latter section does not require an affidavit but requires that the motion set forth, with particularity, the factual grounds for the new trial.

During oral argument on the motion for new trial, the trial court cited I.R.C.P. 59(a)(1) as the basis for granting the new trial. The court stated that it had "ordered the books to be produced to determine whether or not [the plaintiffs have] grounds under 59(a), irregularities in the proceedings of an adverse party, to warrant granting of a new trial."

■■■ Rule 59(a)(1) provides that a motion for new trial "shall be supported by affidavit." The word "shall" denotes a mandatory act. *Madison v. J.I. Morgan, Inc.*, 115 Idaho 141, 144, 765 P.2d 652, 655 (1988). Therefore, upon a motion for a new trial on those grounds that require a supporting affidavit, the court is not required to act in the absence of such affidavit. *Park Stations Inc. v. Hamilton*, 38 Colo.

App. 216, 554 P.2d 311, 312 (1976). However, where the ground for the new trial is the misconduct of counsel in producing documents which would form the basis for the affidavit, the court may act without the affidavit. *Id.*

No affidavit was filed in this case. However, under the facts at hand, we hold that the court acted properly in granting the new trial. The purpose of an affidavit is to give notice of facts previously unknown to the trial court which support the motion in question. *Id.* Here, the trial court had first-hand knowledge of the irregularities of counsel that prevented relevant evidence from being presented to the jury, and which prevented the jury from making an informed decision. H & M repeatedly had failed to produce documents in the face of a court order to produce them. The documents were relevant as they might indicate the amount of beer sold and comprised facts upon which the jury could have made its final determination on the damages question. Under these circumstances, we hold that the absence of the affidavit required under I.R.C.P. 59(a)(1) did not deprive the court of the power to grant relief.

■■■ In its order granting the motion for new trial the court stated that it found "that the jury verdict was based on the lack of evidence submitted regarding [the] number of case sales which the defendant was ordered to produce, therefore, the court finds that the defendants benefited by its disregard and disobedience of a court order." Because this latter statement could be construed to encompass I.R.C.P. 59(a)(6), we will discuss the requirement of particularity in that rule.

■■■ The requirement that the motion for new trial "must set forth the factual grounds therefor with particularity" is mandatory. I.R.C.P. 59(a)(6); *Scafco Boise, Inc. v. Rigby*, 98 Idaho 432, 434, 566 P.2d 381, 383 (1977). The factual grounds must set out where the evidence was insufficient or where the court erred. *Id., citing Paullus v. Liedkie*, 92 Idaho 323, 326, 442 P.2d 733, 736 (1968). The object of the rule is to exclude evidence that is irrelevant to the specified fact and to notify the op-

posing party of the particular finding questioned so that he may fairly present evidence bearing on the matter. *Scafco*, 98 Idaho at 434, 566 P.2d at 383, *citing Palmer v. Northern Pacific Ry. Co.*, 11 Idaho 583, 586–587, 83 P. 947, 948 (1905).

The Ernsts' motion recites that the jury returned a verdict that was inconsistent with the evidence, specifically that the Ernsts had in fact proved the number of cases of beer sold. The Ernsts made this contention because, as stated in the motion, it was the only party to submit any evidence regarding the number of cases sold. The Ernsts then detailed the statements of Ed Prater, the general manager of H & M, that Larry Ernst, as beer manager at H & M, would know best how much beer was sold, and that Prater himself stated in his deposition that "Yes, 28,000 cases had been sold." The motion states that H & M had violated the court's order to produce records and that H & M should be estopped from denying the information it was ordered to produce and judgment should be entered for Ernst. We find that the motion sufficiently excluded irrelevant facts, properly cited the error of the jury and gave H & M adequate notice of the finding that is questioned so that it could present its own evidence on the matter. The motion was proper.

### B. Abuse of Discretion

H & M next contends that the court abused its discretion when it granted the Ernsts a new trial. Whether to grant a new trial is a question of discretion for the trial court. *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 286, 766 P.2d 751, 756 (1988). Such discretion will not be disturbed on appeal unless it clearly appears to have been applied unwisely and to have been manifestly abused. *Id.*

Here, the jury found H & M liable to the Ernsts on the oral contract, but did not award damages because the Ernsts had failed to prove the number of cases of beer sold. The court found that H & M had failed to produce the proper documents that would provide the Ernsts the opportunity to prove these facts, both in regular discovery and in the face of a motion to compel production. We find no abuse of discretion by the trial court in affording the Ernsts the opportunity to present to the jury information that is relevant and may be contained in documents that H & M had been ordered, but refused, to produce.

### II. Failure to State a Claim

H & M next asserts that the trial court erred when it determined that the Ernsts' complaint was sufficient in detail to state a cause of action and allow the case to go forward. H & M argues that the complaint alleged no facts upon which the Ernsts could assert any claim against H & M because H & M did not exist in 1983 when the oral contract was supposed to have been made. H & M also contends that the complaint failed to state a claim upon which relief can be granted based on I.R.C.P. 8(a)(1) and failed to set forth averments of time and place as required in I.R.C.P. 9(f). These are questions of law over which we exercise free review.

"Modern pleading as reflected by I.R.C.P. 8(a)(1) requires only a simple, concise and direct statement fairly apprising the defendants of claims and grounds upon which the claims rest." *Myers v. A.O. Smith Harvestore Products, Inc.*, 114 Idaho 432, 439, 757 P.2d 695, 702 (Ct.App. 1988); *Farrell v. Brown*, 111 Idaho 1027, 1032, 729 P.2d 1090, 1095 (Ct.App.1986). In determining whether a complaint states a cause of action, every reasonable intendment will be made to sustain it. *Curtis v. Siebrand Bros. Circus and Carnival Co.*, 68 Idaho 285, 303, 194 P.2d 281, 299 (1948). Averments of time and place are material and shall be treated like other averments of material matter. I.R.C.P. 9(f).

In its amended complaint, the Ernsts set out the matters required in I.R.C.P. 8(a)(1) and 9(f), that is, a statement of jurisdiction, a short statement alleging a contract between the Ernsts and H & M, the time that the alleged contract was entered into, where the agreement took place, and a demand for relief. We find the pleadings sufficient to state a cause of action and to apprise the defendants of the

plaintiffs' claim. As to the assertion that H & M did not exist in 1983 when the contract was purportedly made, H & M exists now as successor to the assets and liabilities of Hemenway, and hence may be responsible for the latter's debt to the Ernsts. See Part V, *infra* (discussing H & M's liability under the Bulk Transfers law).

H & M makes no specific citation in its brief that the Ernsts failed to state a claim upon which relief could be granted under I.R.C.P. 12(b)(6). However, because H & M raised the issue at trial and the argument in its appellate brief could be construed to encompass the provisions of Rule 12(b)(6), we will address this claim briefly.

█ Civil Rule 12(b) states that a motion to dismiss made under I.R.C.P. 12(b)(6) shall be treated as one for summary judgment under I.R.C.P. 56. See *Tomchak v. Walker*, 108 Idaho 446, 447, 700 P.2d 68, 69 (1985). Therefore, the record must be viewed in a light most favorable to the nonmoving party, the Ernsts, and the action of the trial court is a question of law over which we exercise free review. *Edwards v. Conchemco*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). For a complaint to be dismissed under Rule 12(b)(6) on the ground that the complaint fails to state a claim, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Wackerli v. Martindale*, 82 Idaho 400, 405, 353 P.2d 782, 787 (1960). The objective of the law is to obtain a determination of the merits of a claim, not to have a case dismissed on technicalities. *Id.* at 404, 353 P.2d at 786. As with a motion under I.R.C.P. 8(a)(1), every reasonable intendment will be made to sustain a complaint against a 12(b)(6) motion. *Idaho Commission on Human Rights v. Campbell*, 95 Idaho 215, 217, 506 P.2d 112, 114 (1973).

When faced with H & M's motion under Rule 12(b)(6), the trial court found that the Ernsts did state a claim and found any contrary argument by H & M to be without merit. We agree, for the reasons stated above. We also find the above reasons sufficient to establish that there were gen-uine issues of material fact presented and the trial court was correct in not granting summary judgment to H & M.

## III. Standing

█ H & M argues that the Ernsts are not real parties in interest and that they have no standing to maintain this action because they did not bring the action as corporate officers on behalf of Valley. H & M correctly observes that I.R.C.P. 17(a) requires actions to be maintained in the name of the real party in interest. However, in its argument, H & M presumes that the Ernsts entered into the oral contract on behalf of Valley, whose corporate existence had either terminated at the time the contract was made or soon afterwards became defunct.

As pointed out by the trial court, Larry Ernst stated in his deposition that *he* purchased the Pabst distribution rights, not that Valley bought them. The court stated in one of its memorandum opinions that there was no conclusive record that those rights became a corporate asset when Valley was later formed. Furthermore, the oral contract Larry Ernst entered into with Hemenway was not defined to be a franchise fee or a consulting fee. Ernst could recover individually on the oral agreement as a party to a personal, not a corporate, contract. We agree with the trial court that there is no conclusive evidence to show that the Ernsts could not maintain this action as individuals.

## IV. Statute of Frauds

█ H & M asserts on appeal that the Ernsts' action is barred by the statute of frauds because the agreement is not in writing. Idaho Code § 9–505 requires that certain agreements must be in writing to be enforceable, such as an agreement that by its terms is not to be performed within one year from its making. I.C. § 9–505(1). The contract in this case arguably would appear to fall within the statute. However, although this defense was pled in H & M's original answer, it was not pled in its amended answer and H & M did not raise the issue at trial. When filed, an amended

complaint and answer supersede the originals and cause them to cease to function as pleadings. *People v. Hunt*, 1 Idaho 433, 436 (1872). Failure to plead the defense of the statute in the amended answer acts as a waiver of the defense and all objections based on it. *Slusser v. Aumock*, 56 Idaho 793, 796, 59 P.2d 723, 726 (1936). For the purpose of our review, H & M's failure to first present the statute of frauds issue to the trial court for resolution precludes consideration of the question on appeal. *Pass v. Kenny*, 118 Idaho 445, 448, 797 P.2d 153, 156 (Ct.App.1990).

## V. Partial Summary Judgment

■ H & M also asserts that the trial court erred in granting partial summary judgment to the Ernsts in disposing of H & M's contention that it was not liable to the Ernsts by virtue of Idaho's Bulk Transfers provision of the Uniform Commercial Code. The court held that H & M knew of the Ernsts' claim with Hemenway, for purposes of the Bulk Transfers Act, thus serving as a basis for liability.

A bulk transfer is defined as "any transfer in bulk and not in the ordinary course of the transferor's business of a major part and value of materials, supplies, merchandise or other inventory . . . of an enterprise subject to this chapter." I.C. § 28–6–102. An enterprise is subject to the Bulk Transfers Act if its principal business is the sale of merchandise from stock. I.C. § 28–6–102(3). The Act requires a list of creditors of the transferor to be given to the transferee. Disputed claims are also supposed to be included in the list. I.C. § 28–6–104. If the list is inaccurate, the transfer is not void, but the transferee is not liable to an unnamed creditor unless the transferee had knowledge of the creditor's claim. The "responsibility for the completeness and accuracy of the list of creditors rests on the transferor and the transfer is not rendered ineffective by errors or omissions therein unless the transferee is shown to have had knowledge." I.C. § 28–6–104(3). When a transfer has been made and one or more creditors have been omitted from the list, and the transferee knows of these creditors, the transfer is void as to those creditors and the transferee is liable to them. *Albano v. Motor Center of Pocatello*, 75 Idaho 348, 353, 271 P.2d 444, 449 (1954).

The Ernsts contend that H & M knew of their claim, even though it was not listed in the bulk transfer document given to H & M when it bought Hemenway. Supporting this contention are the deposition statements of Edwin Prater, general manager of H & M. Mr. Prater stated that he had been general manager since H & M bought Hemenway in 1985. Prior to that time, he had worked for Hemenway for nearly fifteen years. He was general manager for the latter firm for three years before it was purchased by H & M. Mr. Prater testified that when the Ernsts approached him about the agreement, he told them to talk to John Van de Kamp, president of Hemenway. Mr. Prater said that he thought this encounter occurred before H & M bought Hemenway. He said that to the best of his recollection, Larry Ernst "asked me more and more about it as the sale [of Hemenway to H & M] became more evident." Mr. Prater was and is an integral part of H & M, and was one of the motivating forces in H & M's purchase of Hemenway. He is a stockholder of H & M and has been a director of the business since its inception. The trial court concluded that Mr. Prater's responses in his deposition indicated that he knew of the disputed claim before and after H & M bought Hemenway.

Viewing the evidence in favor of the non-moving party we find that there were no genuine issues of material fact that could reasonably dispute H & M's knowledge of the Ernsts' claim. As the trial court stated in a memorandum opinion, "Mr. Prater's knowledge as General Manager, Director and stockholder would give the transferee, H and M Distributing, actual knowledge of [the Ernsts'] claim, making the transfer void as to the [Ernsts]." We uphold the trial court's order granting summary judgment to the Ernsts on this issue.

## VI. Motion to Compel Production

■ H & M argues that the trial court erred in granting the Ernsts' motion to

compel production of documents. Although the record is somewhat confusing with regard to this issue, we find that the court did not abuse its discretion in granting the motion.

In February, 1988, the Ernsts moved to compel production of documents that H & M had promised it would produce at the original deposition of David Powers, president and principal stockholder of H & M. Those documents were the books and records of Hemenway and H & M which might have shown the amount of beer sold by Hemenway before the company was purchased by H & M. No formal request for production of the documents appears in the record. However, there is an indication that Mr. Powers was served with a subpoena *duces tecum* for a second deposition but he refused to appear at the deposition or to produce the requested documents. The court heard arguments and granted the motion to compel. H & M moved the court to reconsider its order. The court refused, but stated that no motion to compel discovery had been necessary for production of documents because the Ernsts never requested the materials pursuant to I.R.C.P. 34 "or otherwise." However, the court went on to say that "the order compelling production ... was not improperly entered." The court does not elaborate on this statement, although later in the record there is an indication that the subpoena may have been "treated" by the court as a request for production. Supporting this perspective is the court's ruling on November 22, 1988, on the Ernsts' motion for j.n.o.v. or new trial, in which the court reiterated that Mr. Powers had not appeared at his deposition as ordered by the subpoena and no documents had been produced. The court therefore found that if it "did not take some action ... this would be allowing defendants to profit from his [Powers'] failure to bring the records as requested by [plaintiffs' counsel]." The court ordered H & M to produce the records in two weeks or tell the court why it could not respond. No response was made.

On March 27, 1989, H & M still had not produced the documents. The court found

H & M's refusal to be without cause and again ordered H & M to provide the material. On May 23, 1989, when the court entered its order for new trial, H & M still had not complied. At that point, the court specifically found that the "jury verdict was based on a lack of evidence submitted regarding [the] number of case sales which the defendant was ordered to produce, therefore, the court finds that the defendants benefited by its disregard and disobedience of a court order," and a new trial was appropriate. The court did not order the new trial as a sanction, but because H & M's actions were unjustified and may have contributed to an unjust verdict.

Although the original order to compel production may have been unnecessary inasmuch as it was followed by another order under which no sanctions were ordered, even though H & M had failed to comply, ordering production was not harmful and resulted in no prejudice to H & M. We come to this conclusion in light of the information sought—the records that may have shown the amount of beer sold by Hemenway between December, 1983, and March, 1985. The documents could have provided information to the jury which may have enabled it to make a just determination of damages, if any, and to end the trial of the cause. The court gave H & M the opportunity to show that it could not produce the documents, if that was the case. H & M made no such showing. The court and the Ernsts were justified in seeking information which may have allowed this controversy to come to a close. We find no abuse of discretion in a court's choice to provide a fair trial by allowing the parties to view relevant, discoverable information.

## VII. Errors Regarding Evidence

H & M asserts that the court erred when it refused to allow H & M to introduce several documents into evidence. These documents are (1) a note relating to the purchase of a cooler from Valley by Hemenway; (2) a "settlement and release;" and (3) an affidavit of compliance with the Bulk Transfers Act. We will discuss the ruling on each document in turn.

**(1) *The Cooler Note.*** H & M sought to introduce the note during the testimony of an IRS agent, to show that changes made to repayment figures on the document were made at the same time a purported memorandum agreement concerning wages and beer sales was entered into between Larry Ernst and Hemenway. The court determined that there was no issue before it concerning the purchase of the cooler and held that any changes to the note were irrelevant. The court did, however, allow the witness to examine the note to determine if he remembered it as the note for the cooler.

Relevant evidence is evidence that has a tendency to make the existence of any fact of consequence to the action more probable or less probable than it would be without the evidence. I.R.E. 401. Irrelevant evidence is not admissible. I.R.E. 402. We agree with the court's determination that the payment schedule for the cooler, as evidenced by the note, was irrelevant in that it did not tend to make the existence of a contract between the Ernsts and Hemenway concerning beer sales any more or less probable.

**(2) *The Settlement and Release.*** H & M sought to introduce a settlement and release agreement between the Ernsts and several defendants, initially to show that one of the defendants, John Van de Kamp, president of Hemenway, had "bought his peace" with the Ernsts for a sum less than their claimed $14,000. The court rejected this document on the basis that it was irrelevant. H & M then sought to introduce the agreement to show that H & M, as a successor to Hemenway, was included in the release and therefore was not liable to the Ernsts. The court ruled that whether H & M was a party covered by the release was a question of law for the court to decide, not the jury. Noting that H & M had not raised the issue until that moment at trial, the court stated that it would not rule on the effect of the release at that time, but directed H & M to raise the issue in a post-trial motion if the Ernsts won. H & M did not raise the issue after trial.

Compromise and settlement agreements are subject to the same rules of construction as contracts generally. 15A C.J.S. *Compromise and Settlement* § 21, at page 216 (1967). The construction of a compromise and settlement is usually a matter of law for the court. *Id.* at § 54, at page 307–308. Further, where there is no dispute as to the facts relating to a mutual compromise of an action, the legal effect of the arrangement is a question of law for the court. *Id.* at page 308. The construction of the release in this case, that is, whether it included H & M, was correctly determined by the trial court to be a matter of law to be addressed by the court. When H & M presented the issue of the release, the court correctly refused to submit the issue to the jury because the court had not had an opportunity to rule on the matter. At that time, there was no question of fact regarding the release that was ripe for jury determination. The court did not err when it ruled on this matter.

**(3) *Affidavit of Bulk Transfers Compliance.*** H & M sought to introduce an affidavit allegedly showing that Hemenway had issued a list of creditors to H & M in compliance the Bulk Transfers Act, that the Ernsts' claim was not on the list and that Mr. Powers, the president of H & M, did not know of the Ernsts' claim. The court granted the Ernsts' motion in limine against introducing any evidence "of this nature" to the jury, because it had not been produced before trial as ordered by the court.

The court has the discretion to preclude the introduction of evidence not produced in the face of a court order for production. *See* I.R.C.P. 37. The record indicates that the affidavit may have been part of the business records of H & M requested by the Ernsts and ordered by the court to be produced. We find that the court acted within its discretion when it precluded the affidavit from being submitted to the jury because it appears that H & M had not produced the document before trial. Furthermore, the court had already granted partial summary judgment to the Ernsts on the issue of H & M's knowledge of the

claim. Our affirmance of the partial summary judgment lays to rest the issue with regard to H & M's liability under the Bulk Transfers law.

### VIII. Costs and Fees

H & M argues that the trial court erred in not awarding it costs and attorney fees. The company contends that it was the prevailing party at trial and is entitled to an award of costs and fees as a matter of right.

In this case, the jury returned a verdict for the Ernsts finding that an oral contract existed but that they had failed to prove the amount of damages. In its Judgment Upon Verdict, the court decreed that the Ernsts should "recover nothing" from H & M, and H & M would recover from the Ernsts its costs and disbursements. The court awarded no attorney fees, and did not specify who was the prevailing party. The court then granted the Ernsts' motion for a new trial. It appears that the Ernsts prevailed on their contract claim, and H & M initially prevailed on the damage issue. However, H & M may have prevailed because of their lack of compliance with discovery orders. Because we are upholding the order for a new trial, we consider it prudent to leave an award of costs and fees to the determination of the trial court after the new trial, and recommend that the court specify, at that time, which party has prevailed. I.R.C.P. 54.

### Conclusion

The trial court properly granted the Ernsts' motion for new trial limited to the issue of damages. The jury at the original trial determined that an oral agreement existed between Larry Ernst and H & M. The only issue left to resolve was the extent of damages, specifically, the amount of beer that had been sold. Considering H & M's refusal to comply with the court's order to produce documents that may show how much beer was sold, a new trial is just. *See Sheets v. Agro-West, Inc.,* 104 Idaho 880, 883, 664 P.2d 787, 790 (Ct.App.1983). We affirm the order of the trial court. Costs to respondents, Ernsts. No attorney fees awarded on appeal. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979).

SWANSTROM and SILAK, JJ., concur.